Leslie Sells, *Appellant,*

vs.

Helen Sells, *Appellee*

Decided October 17, 1986

## OPINION

*Before Tso, Chief Justice, Austin and Yazzie, Associate Justices.*

*Vivian Gordy, Esq., Tuba City, Arizona for Appellant and Andy G. Smith, Esq., Chinle, Arizona for Appellee.*

*Opinion delivered by Tso, Chief Justice and Yazzie, Associate Justice.*

## I. Statement of Facts

This case involves a divorce action between appellant-husband and appellee-wife. The District Court of Chinle, Arizona, awarded the wife, who is 53 years old, in ill health and unemployed, $500.00 monthly alimony and a substantial portion of the marital property, including a grazing permit for 127 sheep units, 70 head of cattle, 15 horses and 500 head of sheep. The court awarded the husband a 1984 GMC pickup truck and a grazing permit consisting of 40 sheep units. The husband is employed full-time, earning a yearly income of $38,000. The parties were married to each other 28 years. They have six (6) children, four of whom are adults.

## II. Issues

The marital property and alimony awarded to the wife raises these issues:

1. Did the District Court abuse its discretion in awarding $500.00 a

month alimony to the wife who received a substantial portion of the marital property, including income-bearing property?

2. Did the District Court abuse its discretion in awarding alimony to the wife for an unlimited time period?

Tribal Courts are empowered to dissolve marital relationships by granting divorces. This involves a winding up of matters between the parties such as dividing the property, making provisions for paying debts, deciding matters pertaining to the children, and insuring that the parties are able to care for themselves. In doing so, the courts must use objective standards or guidelines that will be applied equally to the circumstances of the divorcing parties.

The case at bar clearly shows that the Supreme Court must establish guidelines to assist the District Courts in determining whether to award alimony. This Court cannot review an alimony award for abuse of discretion until guidelines for awarding alimony are in place.

The power of the Supreme Court to fashion guidelines for the District Courts is based upon the following general principles:

1. Power to review for abuse of discretion;
2. The need for uniform and impartial laws throughout the Navajo Nation; and
3. The superintending authority of the Supreme Court.

Therefore, before we can review for abuse of discretion by the lower court, this Court must set forth guidelines on the issues.

*Issue I: Did the District Court abuse its discretion in awarding $500.00 a month alimony to the wife who received a substantial portion of the marital property, including income-bearing property?*

Alimony is a sustenance or support of the wife by her divorced husband. In the Anglo world, this stems from the common-law rights of the wife to support by her husband. If allowed in a divorce action, alimony is awarded either in terms of (1) money payment on a periodic or permanent basis, or (2) a lump sum of money of final property settlement on a one time basis. Under state law, alimony is generally allowed by statute.

The Navajo Nation has no standard by statute for determining alimony. This Court, however, is not entirely without alimony guidelines. *Charley v. Charley*, 3 Nav. R. 30 (1980). This Court first resolved the question of whether the courts of the Navajo Nation are empowered to award alimony in *Johnson v. Johnson*, 3 Nav. R. 9 (1980). After deciding that nothing in Navajo tradition or custom prohibits a Navajo court to award alimony, the court applied the New Mexico law under 7 N.T.C. § 204, and allowed an alimony award in a divorce action. *Id.*, p. 11.

There are no fixed rules by which the Court can determine the amount of alimony. This Court in *Charley* held that alimony must be decided on a case-by-case basis in light of what is "fair and reasonable." The guidelines it established which must be considered in light of the "fair and reasonable" standard include:

1. The needs of the spouse seeking alimony;
2. Age of the spouse requesting alimony;
3. Means of support;
4. The earning capacity, including future earnings of the parties;
5. The length of marriage;
6. The amount of property (with values) owned by the parties.

This Court must now set additional guidelines which the District Courts of the Navajo Nation must also consider in a fair and reasonable manner when awarding alimony. The guidelines include but are not limited to:

1. The reasonable market value of marital property apportioned to the spouse seeking alimony and the ability of such spouse to meet his or her needs independently;
2. The economic circumstances of each party, including:
    a. Health;
    b. Station (work or social position);
    c. Vocational skills or need for retraining or to acquire new skills;
    d. Employability;
    e. Opportunities to acquire capital assets.
3. The liabilities of each of the parties;
4. The contribution of a spouse as a homemaker or the contribution of each spouse to the family;
5. Who will have the children, and their needs;
6. Considerations of Navajo traditional and customary Navajo law, where applicable;
7. All other relevant facts.
(See *Shorty v. Shorty,* 3 Nav. R. 151 [1982].)

In applying the standard in *Charley,* supra, the wife in a divorce action was denied alimony because she was only married for two years. Since the wife was also young, healthy, and able to work, she failed to meet the standard. On the other hand, the facts in *Johnson* reached a different result. The parties in that case were divorced after having been married for 28 years. The wife was 52 years of age and unemployed. She was awarded support on the rationale that alimony was to compensate the female spouse

who was unable to earn for herself the same level of material comforts which she enjoyed during converture. *Johnson* at p. 10.

The factors considered by *Charley* and *Johnson* in determining alimony do apply to the instant case. The wife, now fifty-three (53) years old, is in ill health, unemployed, and having been married to her husband for 28 years definitely meets the standards of *Charley,* supra. Likewise, the facts here are identical to the situation of the wife who received alimony in *Johnson,* supra. However, applying the guidelines as a whole to the case at hand, it is difficult to say whether under *Charley* and *Johnson* above the wife is entitled to support from her husband.

The Court finds that the division of property was done in a "fair and just" manner consistent with 9 N.T.C. § 404. See *Shorty,* supra. Among the alimony guidelines of this Court, one important factor is the marital property apportioned to the spouse seeking alimony, as well as the value of the property. In the instant case, the wife was awarded certain income producing property which includes 500 head of sheep and 70 head of cattle. Given this distribution, we are unable to determine from the record what the wife's income is likely to be. There are no facts in the record to suggest what annual income will be derived. The amount of marital property apportioned to a spouse has a direct impact on the alimony awarded to that spouse. This issue must be considered where distribution of marital assets greatly enhance the ability of the spouse seeking maintenance to meet his or her needs independently. Here, the wife certainly will derive income from the 500 head of sheep and 70 head of cattle. No doubt, sheep produce income from the sale of lambs and wool. Cattle, like sheep, reproduce in numbers which guarantee continuous income for Navajo livestock owners. We are unable to determine from the record how much income will be derived from these livestock. Facts are needed to determine this question. Once a court knows how much income will be generated by the income producing property then the court can determine how much alimony, if any, should be awarded. Until more facts are gathered to determine the value and income to be derived from the property apportioned to the wife, we are not in position to decide whether the District Court abused its discretion on this particular issue.

Before addressing the next issue we will review the *Charley* decision that the law of the State where the spouse and children reside will apply to determine the standard for alimony. We reverse the *Charley* decision on this particular point. State laws do not control domestic relations within our jurisdiction. *Williams v. Lee,* 358 U.S. 217 (1959). State laws are only used by the Courts of the Navajo Nation to decide legal issues of first impression. If the Courts of the Navajo Nation apply State law in Tribal Courts too often, then our courts would be only mirror images of Anglo courts.

The counsels of record in this case must not ignore Navajo case laws when addressing legal issues. The soul of this Court is to apply Navajo Tribal law, especially where our custom and tradition are appropriate. We need to promote uniformity, consistency and predictability in developing Navajo law. To apply State law to determine alimony would only create confusion and even encourage forum shopping. For example, if the parties live in Arizona, they may choose to file their action in New Mexico merely because they believe the Navajo courts in that state provide "better" relief.

In fairness to the court in *Charley* it should be pointed out that at the time *Charley* was decided the Navajo Courts were required to apply the law of the state in which the court was sitting if there was no applicable Federal or Navajo law. In the Judicial Reform Act of 1985, this requirement was abolished. 7 N.T.C. § 204 now makes application of state law discretionary with the courts. This allows the Navajo Courts to adopt and develop law that best meets the needs of the Navajo people. It also prevents various courts within the Navajo system from being required to apply different law.

### Issue II. Did the District Court abuse its discretion in awarding alimony to the wife for an unlimited time period?

The divorce decree requires the husband to pay alimony to the wife in the amount of $500.00 per month "until further order of this court." Once a court has determined that alimony in a particular case is necessary and appropriate, the court may order it paid until the court makes other orders modifying the amount or stopping payments all together. Often the trial court is unable to see into the future and know the exact date on which alimony will no longer be needed. An award "until further order of court" allows either party to file a motion to modify the award if circumstances change following the decree. Certain alimony awards are also limited by the death or remarriage of the receiving spouse.

This Court believes the appellant may have thought the words "permanent alimony" meant the award could never be changed. This phrase is frequently used in state courts to distinguish an alimony award in a final decree from the temporary alimony the court may allow while the case is pending. Whether the alimony is labeled permanent or indefinite, it may be subject to future modification by the court.

This action is hereby remanded to the district court to hold an evidentiary hearing and make findings of fact to determine (1) the income to be derived from the income producing property and (2) the amount of alimony awarded in the case at hand. The award of alimony should be awarded consistent with the guidelines set forth in this Opinion.